**Amy G. HORWITZ, Plaintiff–Appellant,**

v.

**L. & J.G. STICKLEY, INC., Defendant–Appellee.**

No. 00–9583.

United States Court of Appeals, Second Circuit.

Oct. 11, 2001.

Joseph Hein; Altamont, NY, for plaintiff-appellant.

Louis P. DiLorenzo and Joseph C. Dole of Bond, Schoeneck & King, LLP; Syracuse, NY, for defendant-appellee.

Gwendlyn Young Reams and Counsel, Philip B. Sklover, Associate General Counsels, Lorraine C. Davis, Assistant General Counsel, Robert J. Gregory, Senior Attorney, Equal Employment Opportunity Commission; Washington, DC, for amicus curiae.

Present STRAUB, KATZMANN and MAGILL,* Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiff–Appellant Amy G. Horwitz appeals from a judgment entered in the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge* ) granting summary judgment in favor of Defendant Appellee L. & J.G. Stickley, Inc. ("Stickley"). Because we conclude that the evidence cited by Horwitz fails to qualify as a disability covered by the Americans with Disabilities Act ("ADA"), we affirm the judgment of the District Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are fully described in the decision of the District Court, *see Horwitz v. L. & J.G. Stickley, Inc.,* 122 F.Supp.2d 350 (S.D.N.Y.2000), familiarity with the record is presumed and we present only those facts necessary for disposition of this appeal. In 1999, Horwitz applied for and was offered a part-time receptionist position with Stickley. After Horwitz accepted the position, Stickley asked her to fill out routine paperwork, including a medical questionnaire. Horwitz did so, indicating that she suffered from bipolar disease for which

---

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

she takes medication and had twice been hospitalized. Horwitz did not, however, completely fill out the medical questionnaire. She failed to complete the question asking whether she ever had a workers' compensation injury or illness or collected short-term disability benefits due to a non-work related injury or illness. When the form was reviewed by a company nurse, the missing information was noted and Horwitz was asked to fully complete the form. However, when Horwitz again submitted the questionnaire, she again failed to answer several questions. The missing information, as well as several inconsistencies on the questionnaire were brought to the attention of a Stickley supervisor. Horwitz was informed that her employment was terminated later that day.

Horwitz commenced the instant litigation claiming that she was discriminated against on account of her disability in violation of the ADA. After limited discovery, Stickley moved for summary judgment alleging that Horwitz did not have a disability within the meaning of the ADA, and that she cannot establish that she was terminated because of her alleged disability. On November 30, 2000, the District Court granted Stickley's motion, finding that Horwitz failed to present evidence demonstrating that she suffered from a disability that substantially limited her ability to engage in life activities. This appeal followed.

## DISCUSSION

█ On appeal, Horwitz argues that the District Court improperly found that she was not disabled as defined by the ADA. A plaintiff may establish coverage under the ADA under any of three possible bases:

The term "disability" means, with respect to an individual-

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). On appeal, Horwitz argues only that she had a record of disability; she does not contend that she had a then-existing disability, or was regarding as having such an impairment, during her interactions with Stickley. The intent of the "record of" prong of the ADA, in part, "is to ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630 App. § 1630.2(k). According to Equal Employment Opportunity Commission ("EEOC") regulations, "[t]his part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Id.* As noted by the District Court, a plaintiff must show more than a history of a medical ailment. They must show that they have record of disability, and that the disability substantially limited the person's ability to perform major life activities. Horwitz cites as proof of her disability the following:

- She was diagnosed as having a bipolar disorder that required hospitalization on two occasions in 1996.

- After her hospitalization in 1996, she was admitted to a psychiatric center for six weeks to undergo group and individual therapy.

- Horwitz continues to take medication to manage her condition. She has had no further significant problems since 1996.

• Horwitz received Social Security Disability Insurance payments ("SSDI") periodically from March 1996 to July 1999.

In finding that Horwitz was not covered by the ADA, the District Court considered only the first three of the above. Because Horwitz did not reveal to Stickley that she received SSDI benefits in the past, the court held that it could not consider this evidence in determining whether Horwitz had a record of disability. *See Horwitz,* 122 F.Supp.2d at 358, n. 6. Horwitz, joined by the EEOC as *amicus curiae,* argue that the District Court erred when it restricted its consideration to only that information known to the employer at the time of the adverse employment decision. We need not resolve this issue. Because we determine that even considering all of evidence cited by Horwitz—known or unknown to Stickley—Horwitz's condition does not constitute a record of disability under the ADA, we need not consider whether the District Court erred in not fully considering Horwitz's record for ADA coverage and liability purposes.

In *Colwell v. Suffolk County Police Department,* 158 F.3d 635 (2d Cir.1995), a police officer claimed a record of disability based on an injury requiring thirty days hospitalization and six months recuperation at home. We found no record of disability, stating that:

[Plaintiff's] hospitalization is certainly a record of an impairment, and the hemorrhage was certainly an impairment, but [plaintiff] was required to show that the impairment for which he was hospitalized was imposing a substantial limitation of one or more of his major life activities. This [plaintiff] failed to do. The only evidence of the extent of the

impairment caused by [plaintiff] hemorrhage was that [plaintiff] (1) was hospitalized for approximately 30 days, (2) remained at home for approximately six months after his hospitalization, (3) returned to work in June 1985, and (4) was placed on light duty with the above-mentioned restrictions until December 1992. A jury could reasonably find that [plaintiff] was unable to work during his recuperation from the hemorrhage (one month in the hospital and six months at home), but a seven-month impairment of his ability to work, with the nonparticularized and unspecific residual limitations described on his police work, is of too short a duration and too vague an extent to be "substantially limiting."

*Id.* at 646. In contrast to *Colwell* is *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), in which a schoolteacher's acute tuberculosis, "serious enough to require hospitalization" years earlier, was deemed a "record of impairment" so that she had the status of a "handicapped individual" within the meaning of the Rehabilitation Act.[1] *Id.* at 281, 107 S.Ct. 1123. But in *Colwell,* we discussed and distinguished *Arline,* stating that

[t]he ADA requires an individualized inquiry beyond the mere existence of a hospital stay. Although the Court in Arline noted that the plaintiff's hospitalization established a record of impairment, the defendant had conceded that her acute tuberculosis had been substantially limiting.... [The contrary reading of Arline] would work a presumption that any condition requiring temporary hospitalization is disabling—a presumption that runs counter to the very goal of the ADA.

1. We have held that the requirements of the ADA and Rehabilitation Act are nearly identical. *See Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998). Decisions relating to the Rehabilitation Act are thus applicable to an ADA analysis.

*Colwell,* 158 at 645–46 (quoting *Burch v. Coca–Cola Co.,* 119 F.3d 305, 317 (5th Cir. 1997), *cert. denied,* 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998) (emphasis added)). *See also Demming v. Housing & Redev. Auth.,* 66 F.3d 950, 955 (8th Cir. 1995) (rejecting plaintiff's position that, under *Arline,* proof of hospitalization for thyroid cancer established a disability); *Taylor v. U.S. Postal Srvc.,* 946 F.2d 1214, 1217 (6th Cir.1991) (holding that *Arline* should not be read "as establishing the nonsensical proposition that any hospital stay is sufficient to evidence a 'record of impairment' ").

Other courts have reached similar conclusions regarding psychological or physical ailments from which the plaintiff has recovered. For example, in *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351 (1996), the Ninth Circuit stated that "Sanders' temporary psychological impairment, from December 19, 1992 to April 5, 1993, with no residual effects after April 5, 1993, was not of sufficient duration to fall within the protections of the ADA as a disability." Similarly, in *Burch,* 119 F.3d at 317, the Fifth Circuit rejected a plaintiff's claim that his alcoholism which required hospitalization and ongoing treatment was sufficient to raise ADA protection. Because past hospitalization, even coupled with continued treatment, does not create a record of a substantially limiting medical condition, the plaintiff was not protected by the ADA. *Id.* Several district courts have reached similar conclusions when confronted with ADA claims based on conditions from which the plaintiff has recovered: *Blanton v. Winston Printing Co.,* 868 F.Supp. 804, 808 (M.D.N.C.1994) (holding that a temporary injury with minimal residual effects cannot be a basis for an ADA claim); *Rakestraw v. Carpenter Co.,* 898 F.Supp. 386, 390 (N.D.Miss.1995) (same); *Johnson v. Foulds, Inc.,* 1996 WL 41482 (N.D.Ill.

1996) (holding that temporary mental depression does not meet the requirements of a disability).

■ In her briefs, Horwitz relies heavily on the fact that she had received SSDI benefits as a result of her bipolar disease. She argues that in order to receive SSDI benefits, she had to have been adjudged disabled to such an extent that the she was unable to perform any substantial gainful activity. This argument is misplaced. EEOC guidelines, as well as our prior decisions, have long held that to be covered by the ADA "the record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell,* 158 F.3d at 645 (citing 29 C.F.R. pt. 1630). The Supreme Court has held that while a Social Security Administration ("SSA") determination of disability can be relevant evidence in determining whether a plaintiff had a record of disability under the ADA, receipt of SSDI benefits should not be a dispositive factor. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 802–05, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *see also Feldman v. Am. Mem'l Life Ins. Co.,* 196 F.3d 783, 791 (7th Cir.1999). In *Cleveland,* 526 U.S. at 802–03, 119 S.Ct. 1597, the Supreme Court noted that because of differences in the mechanics of the SSA and ADA determinations of disability, a person could be considered disabled by the SSA but yet also fail to be substantially limited in performing major life activities according to the ADA. Additionally, the Court explained that because the SSA often uses presumptions in its disability findings, particularly by automatically finding that a disability exists if it is one of a number of "listed impairment[s]," a determination that someone is disabled under the SSA's administrative rules may not mean that he

is also disabled according to the ADA's more fact-intensive inquiry.

Based on the totality of the evidence cited by Horwitz—including her hospitalizations, treatment and SSDI benefits— she has not presented a prima facie case that she is covered by the ADA. Although Horwitz was limited in her ability to work during her periods of hospitalization, those incidents were brief and she has suffered no residual limitations substantially curtailing her ability to be employed or engage in other life activities. And as discussed above, the mere fact of hospitalization, even coupled with continuing recovery or treatment, does not rise to the level of a substantially limiting condition. *See Colwell,* 158 F.3d at 645–46. Moreover, the record indicates that Horwitz's medication has effectively controlled her disorder and allowed her to fully engage in all major life activities. According to Horwitz's own statement, she did not leave any of her post-hospitalization jobs because of her disability. The fact that she additionally received SSDI benefits for her condition does little to change the fact that Horwitz has not demonstrated a record of disability that substantially limited her ability to engage in major life activities. Therefore, we find that her condition does not constitute a disability as defined by the ADA.

Accordingly, the judgment of the District Court is AFFIRMED.